# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

Theodore Levin United States Courthouse

231 W. Lafayette Blvd.

Detroit, MI 48226

(313) 234-2690

Case No.

Yolanda Mays

        Plaintiff

> Case: 2:25−cv−12409
> Assigned To : Parker, Linda V.
> Referral Judge: Ivy, Curtis, Jr
> Assign. Date : 8/4/2025
> Description: CMP YOLANDA MAYS
> V. MICHIGAN, STATE OF ET AL
> (TT)

        In Pro Per

23756 South Keystone Way

Clinton Township, Michigan 48036

    v.

State of Michigan

Governor Gretchen Whitmer

Defendants Attorney

Jerome F. Gorgon Jr.

211 W. Fort Street, Suite 2001

Detroit, Michigan 48226

1

# COMPLAINT

Plaintiff Yolanda Mays ("Plaintiff") appears before this court seeking damages in excess of $2,794,261.30 from the State of Michigan ("Defendant").

(1) Defendant's abuse of system.

## PARTIES

1. Plaintiff is domiciled in the State of Michigan.
2. Defendant is a state within the United States of America.
3. It is established both parties are within the United States of America.

## JURISDICTION AND VENUE

1) This court has personal jurisdiction over Plaintiff.
2) This court has personal jurisdiction over Defendant.
3) This court has jurisdiction over the subject matter of the present action.
4) Plaintiff tried to resolve the discrimination, unjust treatment, and humiliation harsh treatments endured by entities who do business in the State of Michigan; however, Defendant took pleasure in abusing the court process and violating Plaintiff's constitutional rights.

## NATURE OF ACTION

5) The Defendant has allowed individuals to establish businesses within the boundaries of the State of Michigan.
6) These individuals who work for the businesses violated Plaintiff's constitutional rights.
7) After Plaintiff filed a civil complaint against the businesses, Defendant employees utilized the Court to abuse the process, make false allegations, and sentence Plaintiff improperly.
8) On May 12, 2023, Plaintiff sent an email to the Judicial Tenure about the abuse of the process.
9) A response was received from the Judicial Tenure Commission. *(EX 1)*
10) All this information was conveyed to Governor Gretchen Whitmer in a letter at the above address on or around February 26, 2024.
11) To date, she has not corrected the employees of the State of Michigan discriminatory practices in Michigan court system.

**COUNT – 1**      **ABUSE OF THE PROCESS**

12) On October 16, 2018, Case Number 2018-18-10738M-SC was filed, because Buffalo Wild Wings charged an additional $10 to Plaintiff's debit card.

13) After this information was shared with restaurant, the manager called the Plaintiff an ignorant black woman and flung a $10 gift certificate stating that would be the only way the Plaintiff would get her money back.

14) The same manager who called the Plaintiff an ignorant black woman represented Buffalo Wild Wings in the case stating he issued a gift certificate in lieu of a refund.

15) On December 5, 2018, a hearing was conducted by Ryan Zemke a magistrate.

16) Ryan Zemke asked the manager what happened.

17) The manager from Buffalo Wild Wings testified how he tried to give a gift certificate to compensate for the overcharge, but plaintiff refused to take the gift certificate.

18) He said, "Plaintiff demanded her money back."

19) The manager said, "When I refused to refund her money, she started calling me racist, but I have the gift certificate right here."

20) The manger held his hand up with the gift certificate in it.

21) Ryan Zemke instructed the deputy to take the gift certificate.

22) After the deputy took the gift certificate, Ryan Zemke instructed the deputy to give the gift certificate to Yolanda Mays.

23) The deputy walked over to Yolanda Mays and reached out his hand towards Yolanda Mays.

24) She sat there.

25) Ryan Zemke in a stern voice said, "Take the certificate."

26) Yolanda Mays took the gift certificate.

27) Immediately, after taking the gift certificate from the deputy, she placed it on the table.

28) Ryan Zemke smirked and stated you should have gone to your bank.

29) Ryan Zemke dismissed the case with prejudice.

30) Given that there was no dispute regarding the incident and the manager made a racial remark, the plaintiff chose to file the case in district court for a resolution; instead of, the bank.

31) Buffalo Wild Wings staff stole money from the plaintiff, admit to the theft from the plaintiff, called the plaintiff an ignorant black woman, and suffer no repercussions from the 41-B District Court.

32) The $10 gift certificate was left at the courthouse by Plaintiff.

33) To date, Buffalo Wild Wings have never been punished for maliciously stealing from plaintiff.

**COUNT – 2**      **ABUSE OF THE PROCESS**

3

34) On January 22, 2019, Parkway Village Mobile Home Community LLC, the Plaintiff's landlord, sent a letter clarifying the distinction between the landlord's property and the tenant's property. *(EX 2)*

35) On or around January 30, 2019, Parkway Village Mobile Home Community, LLC. failed to fix or repair its plumbing issues.

36) The water overflowed from the frozen pipe at Parkway Village Mobile Home Community, LLC resulted in the formation of ice on the street of Parkway Village Mobile Community, LLC.

37) While attempting to leave Parkway Village Mobile Home Community, LLC. property, Plaintiff got stuck in the ice.

38) Some residents of Parkway Village Mobile Home Community, LLC. laughed, mocked, and recorded the incident.

39) While getting the vehicle unstuck, damage was done to the driver's side rain guard to the vehicle the plaintiff was driving.

40) On May 3, 2019, Parkway Village Mobile Home Community, LLC.'s Property Manager sent a letter instructing tenants not to tamper with the drain cap. *(EX 3)*

41) On May 16, 2019, a family member discovered raw sewage on the side of the property at 23756 South Keystone Way, Clinton Township, Michigan 48036. *(EX 4)*

42) While investigating the situation, an employee from Parkway Village Mobile Home Community, LLC. seen Plaintiff, walked past, observed the situation, and quickly went towards the front office.

43) M.C.L. 554.139 (1)(a)(b) states the lessor covenants the premises in a reasonable repair during the term of the lease.

44) The plaintiff went back into her house.

45) The family members stayed outside.

46) A few moments later a family member came into the house with a letter. *(EX 5)*

47) The letter stated Plaintiff was responsible for repairing the pipes.

48) The Property Manager sent a letter to the plaintiff indicating that the plaintiff was responsible for the plumbing system and must complete repairs.

49) As a direct result from receiving the letter, the plaintiff began procedures to fix the sewer pipes, which are owned by the Landlord.

50) M.C.L.125.2327(1)(b)(3) states a person shall not willfully send out misleading letters.

51) Once the letter was received, the Plaintiff took the following steps:

    i. purchased buckets, bleach, boots, and gloves to start the cleanup process.

    ii. The cleanup process was completed.

    iii. On May 17, 2019, a plug was purchased and installed. *(EX 6)*

4

      iv.  When the plug process was unsuccessful, a member of the Plaintiff's family dug up the soil to expose the pipe.

      v.  A coupling was purchased and installed.

52) On May 21, 2019, a drain cleaner machine was rented from Home Depot.

53) The sanitary sewer riser was cleaned up to seventy feet. *(EX 7)*

54) The plumber system was still clogged.

55) A plumber was called to the property.

56) The sanitary sewer riser was cleaned out seventy-five feet.

57) The plumber was unsuccessful and suggested getting a jetter.

58) A jetter machine was rented from Home Depot. *(EX 8)*

59) The jetter machine was used to clean out sanitary sewer riser for eighty feet.

60) The plumbing system was still clogged.

61) A plumber was called to the property.

62) The first plumber cleans out the sanitary sewer riser for forty feet.

63) The plumbing system is still clogged.

64) He called for assistance.

65) A second plumber arrived at the scene.

66) He cleans out the sanitary sewer riser eighty to ninety feet.

67) The plumbing system is still clogged.

68) He states the sewer needs to be dug up.

69) He wrote the information on the receipt. *(EX 9)*

70) The second plumber said, "Have the park called me."

71) The plaintiff said, "The Property Manager told me it's my responsibility to fix it."

72) The second plumber said, "No."

73) The plaintiff said, "I will show you the letter."

74) The second plumber said, "You don't have a private sewage."

75) It's not your problem.

76) On May 27, 2019, the plaintiff sent the Property Manager at Parkway Village Mobile Home Community, LLC a letter.

77) The letter requested three months of free rent for the experiences the plaintiff endured from May 16, 2019, to May 24, 2019.

78) Parkway Village Mobile Home Community, LLC. responded to the letter by:

      i.  Notified the Health Department. *(EX 10)*

79) The problem occurred at the sanitary sewer riser.

80) Parkway Village demonstrated negligence in executing repairs on the sanitary sewer riser.

81) This action caused harm to me.

82) On June 12, 2019, Case Number 2019-2312-CK was filed in 16th Circuit Court of Macomb County. *(EX 11)*

83) The plaintiff submitted all her discovery.

84) The defendant refused to participate.

85) On January 22, 2020, Plaintiff filed a summary disposition utilizing grounds MCR 2.116 (C)(10).

86) On March 2, 2020, Defendant filed a response to Plaintiff's summary disposition utilizing grounds MCR 2.116(I)(2).

87) On July 9, 2020, Judge Jennifer M. Fuance denied Plaintiff's motion for summary disposition.

88) The defendant's motion for summary disposition was granted.

89) MCR 2.116 (I)(5) states the following:

If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified.

90) The defendant did not provide any documentation to counter the plaintiff's complaint.

91) The opportunity to amend the complaint was never offered.

92) Due to the education of the plaintiff, the timeframe for a claim of appeal by right was not met.

93) On July 30, 2020, an application for leave to appeal was submitted to the Court of Appeals.

94) On January 8, 2021, The Court of Appeals denied the application for leave to appeal was denied.

**COUNT – 3**   **ABUSE OF THE PROCESS**

95) On June 24, 2019, Case Number 2019-19-06839T-LT was filed in the 41-B District Court of Macomb County on behalf of Defendant on Case Number 2019-2312-CK. *(EX 12)*

96) The complaint sought eviction of Plaintiff and all occupants, because Parkway Village Mobile Community, LLC. was trying to force the plaintiff to fix the plumbing problems on its premises.

97) The Property Manager at Parkway Village Mobile Community, LLC informed the Plaintiff that if she did not repair the plumbing for the entire park and drop the lawsuit filed against Parkway Village Mobile Community, LLC, she would face significant consequences.

98) On July 25, 2019, a hearing was held.

99) At the hearing, Parkway Village Mobile Community, LLC., called Jason Salinis as a witness to the sewer issue.

100)   The witness stated that the following:

> ➢ To, to code, there's a four-inch building sewer, and, within 10 feet of the exterior of the home or within the home, there should be a four inch, full-size clean out, to service or maintenance that sewer. *(TR pg. 10)*

101)   Even though Plaintiff was a tenant of Parkway Village Mobile Home Community, LLC., Judge Carrie Lynn Fuca ordered Plaintiff to fix the entire park pipes.

6

102) Judge Carrie Lynn Fuca stated that Plaintiff had ten days to repair the entire community's pipes or face eviction.

103) This case was appealed.

104) The case was remanded back to Judge Carrie Lynn Fuca.

105) Judge Carrie Lynn Fuca scheduled a hearing for July 23, 2020.

106) After the hearing, Plaintiff submitted a brief to the Court. *(EX 13)*

107) Judge Carrie Lynn Fuca stated the Plaintiff must repair Parkway Village Mobile Community, LLC pipes.

108) The transcript was ordered by Plaintiff.

109) The Court Reporter charged an excessive deposit of $175.00. *(EX 14)*

110) Although the Plaintiff paid Jennifer Kane for the transcript, she never supplied her with the transcript.

111) To date, Defendant has allowed Jennifer Kane to receive payment for services she did not render to the appropriate party.

112) On October 22, 2020, Jennifer Kane submitted information stating that she mailed a copy of the transcript to the Plaintiff-Appellant or the Plaintiff's Appellant Attorney. *(EX 15)*

113) The clerk at the 16th Macomb County Circuit Court entered Parkway Village Mobile Home Community, LLC. as the Plaintiff-Appellant. *(EX 16)*

114) Jennifer Kane was clearly aware of the improper action from the clerk at the 16th Macomb County Circuit Court.

115) She maliciously gave the Parkway Village Mobile Home Community, LLC. the transcript.

116) After she gave Parkway Village Mobile Home Community, LLC. the transcript, she proceeded to submit the transcript to the court.

117) When she submitted the transcript to the court, she did not give Plaintiff access to the transcript, which made the transcript unavailable to Plaintiff.

118) Although I have never received the transcript, Jennifer Kane overcharged Plaintiff for the transcript.

119) After she received the overpayment, she maliciously withheld the transcript from Plaintiff possession.

120) Jennifer Kane willful and wanton malicious acts prevented Plaintiff from properly defending herself against her landlord.

121) On February 22, 2021, a hearing was held with Judge Joseph Toia.

122) At the hearing, Plaintiff informed Judge Joseph Toia that she had never received the transcript from Jennifer Kane.

123) The Plaintiff informed Judge Joseph Toia that the Court Reporter had gave Parkway Village Mobile Home Community, LLC. the transcript, but did not give her access.

124) Judge Joseph Toia stated that he could not find the transcript.

125) He asked Parkway Village Mobile Home Community, LLC.'s attorney if he had seen the transcript.

126) The attorney eagerly with a big smile said, "Yeah and started laughing."

7

127) According to Judge Toia, he would read the transcript and enter an Opinion.

128) This was a violation of the 14th Amendment, because Plaintiff was never given access to the transcript.

129) Since Plaintiff was never giving access to the transcript, she could not properly defend herself against the Court or Parkway Village Mobile Home Community, LLC.

130) It is significant to note that Jennifer Kane took money from the Plaintiff as the services were not provided to the Plaintiff.

131) On his Opinion and Order, he stated that Plaintiff was appealing a $1020 in rent to retain the rental property. *(Order pg. 1)*

132) This initial sentence in the Opinion and Order shows Judge Joseph Toia was fully aware that Plaintiff was a tenant of Parkway Village Mobile Home Community, LLC.

133) Moreover, Judge Joseph Toia is educated enough to understand that a tenant is not responsible for the Landlord sewer lines.

134) Judge Joseph Toia elected not to hold Parkway Village Mobile Community, LLC responsible for maintaining its sewer system.

135) Judge Joseph Toia's Opinion and Order is in erred, because it forces Plaintiff to fix Parkway Village Mobile Community, LLC's sewer lines or become homeless.

**COUNT – 4**    **ABUSE OF THE PROCESS**

136) At some point, Parkway Village Mobile Home Community, LLC. and Universal Utilities, Inc. went into a contractual agreement.

137) A mutual agreement was made between Parkway Village Mobile Home Community, LLC. and Universal Utilities, Inc. as to which water meter would be beneficial for Parkway Village Mobile Home Community, LLC tenants.

138) Universal Utilities, Inc. is a third-party billing company.

139) Parkway Village Mobile Home Community, LLC is the owner of the water meter.

140) Since the tenants of Parkway Village Mobile Home Community, LLC. is not financially responsible for receiving access to utilities, he or she should not be held financially responsible for Parkway Village Mobile Home Community, LLC. equipment.

141) Universal Utilities Inc. decided to charge an excessive miscellaneous fee of $310. *(EX 17)*

142) M.C.L. 445.903(1)(a) prohibits the Defendant from sending out a bill that is confusing or misleading.

143) The Plaintiff called Universal Utilities, Inc. to inquire about the $310 miscellaneous fee.

144) The customer service representative stated that the fee was from a $225.00 water meter fee and $85 employee fee.

145) The customer service representative stated that the $225.00 water meter fee would be to replace the water meter with a new water meter.

146) In the Court of Appeals Opinion and Order, they wrote the following:

> ➢ Defendant further explained that on April 4, 2019, it discovered that plaintiff's water meter was broken because she apparently allowed the meter or the connecting pipes to freeze, so it replaced the meter and charged plaintiff a replacement fee of $225 and a service fee of $85 (totaling $310). *(OR page 2)*

147) The Court of Appeals refused to acknowledge the fact that the State of Michigan does not have freezing weather in the month of April.

148) The Court of Appeals willful and wanton abused the process.

149) The Court of Appeals did not review the documentation in a fair and transparent manner, nor did it apply knowledge impartially with respect to case 2019-2503-CZ.

150) In the discovery phase of this case, Universal Utilities, Inc. sent in documents showing the water meters were swapped from another mobile home facility. *(EX 18)*

151) The Defendant's employees ignored the fact that Universal Utilities, Inc. was manipulating its customers tenants by using used meters.

152) After the used meters were installed, Universal Utilities, Inc. charge its customers tenants an amount, which has not been clearly specified how much a new meter would cost.

153) Furthermore, it is unlawful to apply the price of a new item to products that have been used for an indeterminate period.

154) The Courts refused to order Universal Utilities, Inc. to address the formal interrogatories asking the life span of a water meter.

155) The Plaintiff informed her that she does not own a water meter.

156) The Plaintiff stated due to the fact she does not own the water meter she should not be financially responsible for the water meter.

157) The Court of Appeals minimized the fact that Universal Utilities, Inc. charged a $85.00 travel fee by stating it was a service charge. *(EX 19)*

158) Universal Utilities, Inc. clearly stated this fee was for employee expenses.

159) The fact that the Court of Appeals ignored the facts about the fee shows a violation of Michigan Judicial Code of Conduct.

160) The Plaintiff indicates that she does not have employees and therefore asserts she should not be held responsible for payment to the individual who replaced the water meter with another potentially used meter.

161) The Plaintiff informed the customer service representative that she had not lost water at that time.

162) The customer service representative ignored Plaintiff statement and reiterated that failure to pay the bill would result in service disconnection of services.

163)   On May 12, 2019, a letter was sent to Universal Utilities, Inc. disputing the charges and requesting a payment plan.

164)   To date, Universal Utilities Inc. has never acknowledged the letter.

165)   In the discovery phase of case 2019-2503-CZ, Universal Utilities, Inc. produced documents stating the letter was acknowledged in an email.

166)   The email has never been produced by Universal Utilities Inc.

167)   On May 20, 2019, another call was made requesting a payment plan.

168)   This request was denied.

169)   On May 22, 2019, the remaining balance of the bill was sent to Universal Utilities, Inc.

170)   This payment was cashed by Universal Utilities, Inc. on June 5, 2019; however, the water was still disconnected.

171)   Universal Utilities, Inc. stated the payment was presented after the water was disconnected, so the disconnection was valid.

172)   On google reviews, Universal Utilities, Inc. has several complaints stating that payment was sent in a reasonable amount of time, but Universal Utilities, Inc. waits until after the due date to apply the payment.

173)   This method always results in water disconnection and high fees.

174)   All this information was presented to Judge Jennifer M. Fuance in the 16th Circuit Court of Macomb County, Michigan.

175)   Universal Utilities Inc. sent a bill from usage dates 07/01/19 to 08/06/19. *(EX 20)*

176)   The bill states 2,000 gallons of water were used in this billing period.

177)   Since the plaintiff moved back in on July 21, 2019, and the billing period ended on August 6, 2019, it is unlikely that 2,000 gallons of water would be used in that short amount of time.

178)   Moreover, the bill states it has a past due balance of $42.16.

179)   The water was turned off in the afternoon of June 5, 2019.

180)   The conclusion that the services were on for four and a half days is valid.

181)   Since the water was only on for four and a half days, it is highly unlikely a balance of $42.16 would be sufficient.

182)   Universal Utilities, Inc. bills are too high.

183)   A bill with a usage period from January 6, 2020, to February 5, 2020, stated Pllaintiff used 26, 500 gallons of water. *(EX 21)*

184)   This amount of water is very excessive; however, the Judges at the Court of Appeals decided to issue an Opinion and Order on the case stated that an average of bills was considered, and I was only charged about $50 a month; therefore, this bill will not be considered excessive. *(EX 22)*

185)   No utility company in the State of Michigan permits water disconnection based on average bills; therefore, the Court of Appeals' conclusion on this matter does not align with current practices.

186)   Moreover, the utility service will be disconnected if the monthly bill is not paid; therefore, averaging bills is inaccurate.

187) Most importantly, the facts presented to the Court of Appeals showed high monthly bills.

188) The Court of Appeals was not giving any information that indicated he or she should have average bills.

189) Alas, the Court of Appeals did not have all the bills presented; therefore, the average date range was not applicable to this case.

190) The Court of Appeals Opinion and Order states it does not facially appear that the $310 water meter fee is unreasonable. *(EX 22)*

191) The Court of Appeals failed to address the issue that the water meter was used, the plaintiff did not own the water meter, and the plaintiff did not have an employee.

192) The Court of Appeals response to Judge Jennifer M. Fuance stating it was legal issue with the case was she ultimately dismissed the case.

193) On April 5, 2022, Universal Utilities, Inc. disconnected services from my residence. *(EX 23)*

194) Per MCL 125.2328(1)(e) An owner or operator of a mobile home park or seasonal mobile home park shall not engage, or permit an employee or agent to engage, in any of the following unfair or deceptive methods, acts, or practices: Directly or indirectly charging or collecting from a person money or other thing of value for electric, fuel, or water service without the use of that service by a resident or tenant being first accurately and consistently measured, unless that service is included in the rental charge as an incident of tenancy.

195) Despite Universal Utilities, Inc.'s threat of criminal charges if the Plaintiff uses water at her address, a monthly bill continues to be issued. *(EX 24)*

196) An additional $15.00 late fee is applied monthly to the Plaintiff's account when payment for unused services is not made; consequently, a new shut-off date is given every month. *(EX 25)*

197) Judge Jennifer M. Fuance stated that the case had legal issues, and she would request an amended complaint.

198) The Court of Appeals complained about the complaint submitted by the Plaintiff.

199) On June 9, 2022, the Plaintiff sent an amended complaint. *(EX 26)*

200) The amended complaint was rejected by Defendant's court system.

201) The Defendant has allowed businesses within its state to violate MCL 125.2328(1)(e) An owner or operator of a mobile home park or seasonal mobile home park shall not engage, or permit an employee or agent to engage, in any of the following unfair or deceptive methods, acts, or practices: Directly or indirectly charging or collecting from a person money or other thing of value for electric, fuel, or water service without the use of that service by a resident or tenant being first accurately and consistently measured, unless that service is included in the rental charge as an incident of tenancy.

11

**COUNT – 5**    **ABUSE OF THE PROCESS**

202)    Capital One filed a complaint against Plaintiff. *(EX 27)*

203)    The complaint was not written according to Michigan Court Rules.

204)    The complaint contained a written instrument.

205)    The complete complaint and written instrument contained twenty-four pages.

206)    This written instrument contained blank pages.

207)    Several pages in the written instrument were illegible.

208)    The Plaintiff have consistently tried to challenge the issues with the complaint.

209)    Judge Jacob M. Femminineo has ignored the issues of the complaint and treated the Plaintiff in a dismissive, rude manner.

210)    While granting Capital One the case, Judge Jacob M. Femminineo violated the Plaintiff's due process rights, abused the process, and granted jail time for the Plaintiff of this case.

211)    The Plaintiff of this case filed an answer and summary disposition to the case.

212)    Capital One responded.

213)    A reply brief was not submitted for this case.

214)    On March 15, 2022, a hearing was held.

215)    As the Plaintiff in this case did not file a reply brief, Judge Jacob M. Femminineo imposed a $250.00 sanction to be paid to Capital One's attorney, citing that the Plaintiff was unprepared for court.

216)    The Plaintiff of this case filed an interlocutory appeal.

217)    At that time, the plaintiff believed if an interlocutory appeal was filed an automatic stay would be entered on the case at the district court, and the case would continue when the higher court decides.

218)    Judge Jacob M. Femminineo rescheduled the hearing to April 12, 2022.

219)    At the hearing, Judge Jacob M. Femminineo completely ignores the Plaintiff of this case and asked Capital One's attorney to give him an update.

220)    The Attorney states she did not pay or submit a brief.

221)    The Plaintiff of this case told Judge Jacob M. Femininieo that she filed an application for leave to appeal.

222)    While the Plaintiff of this case was in the middle of talking, Judge Jacob M. Femininieo muted her microphone.

223)    The Plaintiff of this case did not have an Attorney representing her against Capital One.

224)    Capital One's Attorney said, "MCR 2.116 (G) states if the other party does not respond to a brief the case will be granted."

225)    Judge Jacob M. Femininieo granted the case to Capital One.

226)    MCR 2.116 (G) (1) (iii) states the following:
the moving party or parties may file a reply brief in support of the motion. Reply briefs must be confined to rebuttal of the arguments in the nonmoving

12

party or parties response brief and must be limited to 5 pages. The reply brief must be filed and served at least 4 days before the hearing.

227) The 16th Circuit Court reversed the $250.

228) An appeal was submitted regarding Judge Jacob M. Femininieo's ruling in favor of Capital One.

229) The claim of appeal was filed on April 20, 2022.

230) On June 22, 2022, the plaintiff's lawyer entered a Motion to Dismiss.

231) Per MCR 7.204(G) an appearance by the Plaintiff-Appellee was to be made within 14 days.

232) June 22, 2022, was over the 14 days permitted by Michigan Court Rules to make an appearance; however, at a hearing on July 25, 2022, Yolanda Mays was instructed by Judge Diane M. Druzinski to produce a copy of the brief to Capital One's lawyer. (*ID page 6*)

233) Judge Diane Druzinski upheld Judge Jacob M. Femininieo's decision.

234) On October 27, 2022, an application for leave to appeal was submitted to the Court of Appeals.

235) On November 12, 2022, Angela Little was paid $50.00 to transcribe the hearing for this application for leave to appeal.

236) On December 1, 2022, Angela Little added herself to the Court of Appeals case.

237) In December 2022, Angela Little release the transcript to Capital One.

238) On March 13, 2023, the Court of Appeals sent a letter stating that the transcript had not been received and needs to be received to prevent a delay in the application.

239) On March 14, 2023, Plaintiff e-mailed Angela Little. *(EX 28)*

240) On March 20, 2023, Angela Little replied to the e-mailed. *(EX 29)*

241) On April 5, 2023, the Court of Appeals denied the application.

242) According to the Court of Appeals, the Plaintiff of this case grossly disregarded a fair presentation. *(EX 30)*

243) On April 11, 2023, Angela Little sent the transcript. *(EX 31)*

244) On April 19, 2023, Yolanda Mays submitted a motion for reconsideration.

245) The motion was denied.

246) An application for leave to appeal was submitted to Michigan Supreme Court.

247) Michigan Supreme Court denied the application.

248)

249) On May 25, 2023, Judge Jacob M. Femininieo held a hearing.

250) At the hearing, Judge Jacob M. Femininieo ignored Yolanda Mays and asked the Capital One's Lawyer what was going on with the case.

251) The Court made a scenario, which portrayed Yolanda Mays as only wanting the $250.00 sanction overturned. *(TR page 4)*

252) Judge Jacob M. Femininieo is a very confused individual.

13

253) As the Court initially understood that the Plaintiff's Attorney was representing Yolanda Mays, the defendant, Ms. Mays clarified to the Court that she was appearing pro se.*(TR page 5 - 6)*

254) Judge Jacob M. Femininieo could not comprehend the case, so Yolanda Mays requested a Motion to Stay.

255) At first, he stated that's not how it works.

256) In a matter of seconds, he recanted his statement and denied the Motion to Stay. *(TR page 9)*

257) Capital One's Lawyer stated the Court of Appeals considered Yolanda Mays a vexatious filer.

258) He asked the Court to enter a $8,000.00 bond and grant $3,589.00 in attorney and transcript fees.

259) The Court asked Yolanda Mays if she had a response.

260) Yolanda Mays stated to Judge Jacob M. Femininieo that she had not previously seen the motion presented by Capital One's Attorney.

261) Yolanda Mays spoke in clear and plain English to Judge Jacob M. Femininieo when she requested time to respond to the motion presented at the hearing. *(TR page 14)*

262) Currently, there is no law which permits the Plaintiff's Attorney to set the amount of the bond for a defendant. *(TR page 16)*

263) Moreover, the Court of Appeals denied the bond in two different Orders. *(Order 1 & 2)*

264) The Court of Appeals has jurisdiction over the 41-B District Court; therefore, the bond should not have been applied to the case.

265) In the end, the bond was excessive.

266) Yolanda Mays informed Judge Jacob M. Femininieo the bond was excessive. *(TR page 17)*

267) Judge Jacob M. Femininieo asked Capital One's Attorney how he came up with $8,000.00.

268) Capital One's Attorney put the biggest smile on his face and said, "I doubled the judgment and then added on some more."

269) Since the bond should not have been accepted by the district court, Plaintiff filed an appeal without the bond.

270) She pleaded with circuit court to accept the appeal, so she could try and gain justice with a different Judge.

271) The circuit court accepted the appeal, but stated the case must back to Judge Diane Druzinski.

272) Judge Diane Druzinski issued an Opinion and Order noting that the Plaintiff did not request a reduction in bond; therefore, she affirmed Judge Jacob Femininieo's Order.

273) An application for leave to appeal was denied at the Court of Appeals and Michigan Supreme Court.

14

274) Capital One's Attorney stated Yolanda Mays should never have filed the appeals.

275) Since Yolanda Mays filed the appeals, Capital One's Attorney said she was in contempt.

276) On June 16, 2023, he submitted in the 41-B District Court a motion to show cause.

277) On July 18, 2023, Defendant-Appellant requested a Motion to Stay.

278) The motion was denied.

279) After the motion was denied, the Judge stated he would send the paperwork in for Yolanda Mays to have a public defender.

280) He rescheduled the hearing until August 10, 2023.

281) William Branch was assigned as Yolanda Mays public defender.

282) On August 10, 2023, at the courthouse, William Branch introduced himself to Plaintiff.

283) The Plaintiff started to explain the case to William Branch.

284) As the Plaintiff explained the case, William Branch raised his hand.

285) William Branch stated firmly, "I'm not interested in your case."

286) William Branch said, "This is all your fault."

287) William Branch said, "You keep filing appeals."

288) William Branch said, "Now, you are at risk of going to jail."

289) William Branch said, "My observation is you stop filing appeals, go find a job, and pay your bills."

290) The Plaintiff said, "This is not my bill."

291) The Plaintiff said, "Capital One does not have a contract with this Yolanda Mays."

292) William Branch said, "I'm going to talk to the other Attorney."

293) After speaking with Capital One's Attorney, William Branch suspiciously started asking a series of questions.

294) The Plaintiff said, "The circuit court did not address the bond request, the Court of Appeals denied the requests, and the Michigan Supreme Court also did not respond. Therefore, what is the basis for the district court granting an $8,000.00 bond?

295) William Branch went and repeated the plaintiff statement to Capital One's Attorney.

296) William Branch said, "You know."

297) William Branch said, "The law system is very complicated."

298) William Branch said, "Capital One's Attorney had every right to request the bond, and you should stop talking about it."

299) The Plaintiff said, "I thought you were not interested in the case."

300) William Branch said, "I'm not."

301) William Branch said, "He wanted me to talk about the bond with you."

302) The hearing was adjourned until September 28, 2023.

15

303)   On August 25, 2023, Capital One's Attorney seized income from a non-periodic payment financial institution.

304)   The income taken from the non-periodic payments was wage earnings.

305)   These earnings were not made by Yolanda Mays.

306)   The law states co-owners are not to be held responsible for other individual financial obligations.

307)   Most importantly, the case should have never been granted to Capital One.

308)   To date, a contract between the parties has never been produced to the court.

309)   MCL 600.5341 states a creditor does not have authority to garnish wage earnings.

310)   It is common for individuals to receive wage earnings in the method of direct deposit.

311)   If Capital One's Attorney had issued the wage writ of garnishment to the employer the wage income would have never been stolen, because the Plaintiff is not employed.

312)   Also, Capital One's Attorney never served the writ of garnishment to the Plaintiff.

313)   Since the appeal by right was revoked, because of the excessive bond, an application for leave to appeal was filed in the Court of Appeals and Michigan Supreme Court.

314)   The Court of Appeals stated it lacks jurisdiction and dismissed the case. *(EX 32)*

315)   Michigan Supreme Court denied the application.

316)   On November 28, 2023, a hearing was held for the Motion for Contempt.

317)   At the hearing, Capital One's Attorney complained about Yolanda Mays utilizing her right to file an appeal for an improper Order. *(TR page 4)*

318)   After he finished complaining about Yolanda Mays filing appeals, he tried to bargain with Yolanda Mays into dismissing the appeal with Michigan Supreme Court.

319)   His proposal was for Yolanda Mays to dismiss the appeal with prejudice while he dismisses his motion for contempt without prejudice.

320)   After making this ridiculous proposal, he wanted to revoke Yolanda Mays rights by not letting her file any more appeals for the improper rulings from the 41-B District Court.

321)   Eagerly, Judge Jacob M. Femininieo asked Yolanda Mays if she would accept Capital One's Attorney offer.

322)   After the Plaintiff did not accept the offer, Judge Jacob M. Femininieo said, "What order did she violate Counsel?" *(TR page 5)*

323)   The Plaintiff requested a Motion to Stay.

324)   Judge Jacob M. Femininieo ignored the Plaintiff.

325)   Without presentencing or any due process, Judge Jacob M. Femininieo sentenced the Plaintiff to thirty days. *(TR page 9)*

16

326)    After Judge Jacob M. Femininieo revoked the Plaintiff's due process and permitted Capital One's attorney to secure an $8,000 bond, an application for leave to appeal was filed with the Court of Appeals.

327)    The Courts of Appeals denied the application.

328)    On August 5, 2024, an application for leave to appeal was submitted to Michigan Supreme Court.

329)    On August 6, 2024, the application was rejected. *(EX 33)*

330)    On August 6, 2024, Yolanda Mays called Michigan Supreme Court. *(EX 34)*

331)    She told the Clerk that her case had been wrongfully rejected by Michigan Supreme Court.

332)    The Clerk asked for information about the case.

333)    The Clerk said, "Oh."

334)    The Clerk said, "I see you are trying to submit a case, but you don't have a case with us."

335)    The Plaintiff stated that one of the requirements is to submit the case to the Court within fifty-six days after receiving the Order from the Court of Appeals.

336)    The Clerk said, "That's for criminal cases."

337)    The Clerk said, "Your case was civil."

338)    Yolanda Mays said, "My case was civil, but turned into criminal."

339)    The Clerk said, "That's not true."

340)    Yolanda Mays said, "So, why was I appointed a public defender?"

341)    The Clerk said, "Well, you are not famous, so your case would never turn criminal."

342)    The Clerk said, "That happens to celebrities."

343)    The Clerk said, "The prosecutor could not pick up the case."

344)    The Clerk said, "We have lawyers looking at cases when they are submitted to us."

345)    The Clerk said, "If the lawyers rejected the case, they were right."

346)    The Clerk said, "What I can do for you is to have the lawyers contact you and explain to your case in terms you would understand."

347)    Yolanda Mays said, "Ok, because I never heard of getting jail time for a civil case."

348)    The Clerk said, "The lawyers are in Virgina, but I will send them an e-mail."

349)    The Clerk said, "I don't know when they will respond, but they are checking the e-mails."

350)    To date, the Plaintiff has not been contacted.


## DAMAGES

__COUNT – 1__    __ABUSE OF THE PROCESS__

17

Since Plaintiff is an African American female, the Courts allow businesses to continue to violate her constitutional rights. No legal document permits a party to enter court, confess to theft, and claim that the victim can only be compensated with a gift certificate valid exclusively at their business establishment. It was Defendant position to apply the law the way it was written; consequently, it deviated from this position. As a result, Plaintiff is requesting $10.00 in economic damages and $1,000.00 for willful and wanton of dismissing this case.

**COUNT – 2    ABUSE OF THE PROCESS**

The federal government has stated pro se filers should receive leniency; instead, Judge Jennifer M. Fuance stated to the plaintiff at a hearing on September 9, 2019, she set aside a default judgment and said, "That's what happen when you don't know all the facts of the law."

Judge Jennifer M. Fuance has continuously had the demeanor of acting offended that plaintiff is in her courtroom. She actively searches for any excuse to dismiss Plaintiff's case.

The Court of Appeals has the same demeanor as Judge Jennifer M. Fuance.

Michigan Supreme Court does not review Plaintiff cases for accuracy.

The State of Michigan court system is responsible for determining whether an individual's constitutional rights have been violated; however, in the Plaintiff's cases, the employees of the court system have overlooked these violations. When the State of Michigan court system does acknowledge such violations, its employees have misused the legal process to not grant the case to Plaintiff.

For abuse of process in the trial court, Plaintiff is requesting $150,000.00.

For abuse of process in Court of Appeals, Plaintiff is requesting $150,000.00

For discrimination, Plaintiff is requesting $100,000.00.

Since Plaintiff had to devote a substantial of time to cases; instead of, focusing on her entrepreneurship, she is requesting $250,000.00.

At first, Plaintiff complied with Parkway Village Mobile Home Community, LLC. The plaintiff spent $740 before she was informed the plumbing issue was Parkway Village Mobile Home Community, LLC. She is requesting to be reimbursed by Defendant.

The plaintiff incurred varies expenses; such as, ink for printer $550.00.

The plaintiff sought counseling for her cases, which resulted in $1,000.00

The Court charge filing fees, serving fees, and case evaluations, which resulted in $326.00.

Judge's Copy were sent to Jennifer M. Fuance via United States Postal Service, which resulted in $58.00.

**COUNT – 3    ABUSE OF THE PROCESS**

This case went Judge Joseph Toia on two different occasions. The first time the case went Judge Joseph Toia was for case 2019-000342-AV.

Jennifer Kane charged a total of $138.65 for the transcript. *(EX 35)*

On May 22, 2025, Jennifer L. Moore, an employee at the 41-B District Court, sent an email stating that the cost of transcripts is $25.00. *(EX 36)* Therefore, it is deemed excessive for Jennifer Kane to charge a significant amount for the transcripts in case 2019-19-06839T-LT. Furthermore, she did not produce the last transcript order to the Plaintiff; consequently, Plaintiff is requesting Jennifer Kane pay Plaintiff $288.65.

The Plaintiff formally requests Parkway Village Mobile Community, LLC to release the title of the Plaintiff's mobile home to the Plaintiff.

The Plaintiff is requesting case 2019-000342-AV be overturned.

## COUNT – 4    ABUSE OF THE PROCESS

The evidence presented to Defendant's court system shows a continuous history of violation of Plaintiff's constitutional rights; however, Defendant's employees ignore the violation and unsuccessfully searched for laws to discredit the Plaintiff case. In the process of trying to review evidence to discredit the Plaintiff, Judges of the Defendant degraded and humiliated Plaintiff.

The Plaintiff is requesting case 2019-2503-CZ be overturned. Since the Plaintiff cannot consistently live in her own home, she has suffered significant financial hardship.

Universal Utilities, Inc. has banned the Plaintiff from utilizing its services; therefore, the Plaintiff requests Universal Utilities, Inc. remove her name from any account for its business. Additionally, the plaintiff is requesting any debt owed from this company be resolved.

The Courts continuously ignore the fact that Plaintiff's constitutional rights are consistently violated. When the Plaintiff asked Judge Jennifer M. Fuance for justice, she set aside the default judgment and said, "That is what happens when you don't know all the facts of the law."

Since the Courts willfull and wanton abused the process, the Plaintiff is requesting $350,000.00.

Since the Plaintiff constitutional rights are violated, she must put her career on hold to try to self-teach herself. The voluminous laws have caused the Plaintiff to focus full-time on defending herself against businesses; as well as, magistrates, and judges. To compensate for her loss of income, Plaintiff is requesting $200,000.00.

## COUNT – 5    ABUSE OF THE PROCESS

Capital One filed a complaint that was not written according to Michigan Court Rules. Also, the written instrument was vague, illegible, and did not contain the contract.

19

An answer with affirmative defenses and summary disposition was submitted to the Court. Similarly, Capital One's Attorney responded to the summary disposition. A hearing was scheduled for March 15, 2022. Immediately at the hearing, Judge Jacob M. Femininieo showed prejudice against the Plaintiff. Since Judge Jacob M. Femininieo violated the Michigan Judicial Code of Conduct, he violated the Plaintiff's constitutional rights. The willful and wanton abusive behavior by Judge Jacob M. Feminineo cause great emotional and financial hardship for the Plaintiff. To date Judge Jacob M. Feminineo is still violating African Americans constitutional rights. For her suffering, the Plaintiff is requesting $390,000.00.

Judge Jacob M. Feminineo has a mental disorder, and the Plaintiff is requesting the Defendant have a mandatory mental evaluation to make sure he is mentally capable of performing the duties of a Judge.

Since Capital One did not submit a contract, Capital One was malicious for instructing an immoral law firm to file cases against innocent individuals. For Capital One to engage in bad faith practices, the Plaintiff is requesting Capital One pay Yolanda Mays $50,000.00.

Jeffrey Bearss continuous took pleasure out of destroying Yolanda Mays. Since Jeffrey Bearss is employed with Weltman, Weinberg & Reis, the Plaintiff is requesting his employer to pay Yolanda Mays $400, 000.00.

The Plaintiff is requesting Capital One case 2021-21-05459T-GC be overturned.

The Plaintiff is requesting William Branch be held accountable for repeating the complete conversation between him and the Plaintiff to Capital One's Attorney. William Branch was very clear that he only took the case to gain a paycheck from the State.

The Plaintiff is a law-abiding citizen who asserts that her constitutional rights have been repeatedly violated within the State of Michigan. Despite her efforts to seek justice through appropriate channels, she has encountered ridicule, became homeless, has excessive fees, and punitive actions, including jail time, by employees of the Defendant. After contacting Governor Gretchen Whitmer, the issues were not resolved. The Plaintiff requests an additional $500,000.00 in compensation due to business loss to pursue justice.

The Plaintiff is requesting to be reimbursed $150.00 in transcript fees.

If this case goes to trial, Plaintiff is requesting a jury trial.

Respectively submitted,

20

Yolanda Mays

August 4, 2025